FILED
2007 Jan-19 AM 09:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA A. SHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: |
| | ) | |
| v. | ) | CV-06-RRA-0013-S |
| | ) | |
| O'CARRS MANAGEMENT CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

CONSOLIDATED WITH

| | | |
|---|---|---|
| O'CARRS MANAGEMENT CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CASE NO.: |
| v. | ) ) | CV-06-RRA-306-S |
| PATRICIA SHEELER, et al., | ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**
(Re Motion for Attorney's Fees and Costs, Ct. Doc. 28)

This consolidated case comes before the court on O'Carrs Management Corporation's motion for award of attorney's fees and costs (doc. 34) in the later-filed case.

**I.     PROCEDURAL HISTORY**

This consolidated case began on January 4, 2006, when Patricia Sheeler ("Sheeler") filed CV-06-RRA-0013-S, *Patricia A. Sheeler vs. O'Carrs Management Corporation, et al.*  The complaint alleged federal question subject matter jurisdiction under 28 U.S.C. § 1331.  The

complaint alleged that in selling Sheeler an alleged franchise, the defendants actually sold her a "security" as defined by and in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934. These violations of the federal securities laws, the complaint alleged, were of such a nature and degree that they caused the security Sheeler bought from the defendant, styled "O'Carrs (sic) Management Corporation Standard Franchise Agreement," to be an illegally issued unregistered security, one to which Sheeler's agreement to purchase had been fraudulently induced by the defendants. In addition, pendent state law claims were made, based on the contention that the defendants fraudulently induced Sheeler to purchase the security.

On January 20, 2006, the defendants, including O'Carrs Management Corporation ("O'Carrs"), filed a motion to compel arbitration of the Plaintiff's claims. (CV-06-RRA-0013-S, doc. 10). The defendants did not allege that that case lacked subject matter jurisdiction.

On February 8, 2006, O'Carrs filed a complaint against Sheeler for injunctive relief in the Circuit Court of Jefferson County, Alabama. Although the complaint was purportedly based on purely state law claims, Sheeler removed it on February 13, 2006. That case is styled CV-06-RRA-306-S, *O'Carrs Management Corporation v. Sheeler, et al*.

On March 6, 2006, O'Carrs filed a motion to remand CV-06-RRA-306-S. That same day, the court consolidated CV-06-RRA-306-S with CV-06-RRA-0013-S.

On March 28, 2006, the magistrate judge granted the motion to compel arbitration in CV-06-RRA-0013-S. Through that order, the issues in CV-06-RRA-13-S were referred to arbitration pursuant to the terms of the parties' arbitration agreement. Case number CV-06-RRA-13-S was ordered to be stayed pending the decision of the arbitrator. The court ordered

CV-06-RRA-306-S to continue.  The magistrate judge later amended the March 28, 2006 order and converted it to a report and recommendation.  On May 8, 2006, District Judge U.W. Clemon adopted the report and recommendation of the magistrate judge and entered an appropriate order. On May 30, 2006, Sheeler filed a notice of appeal of Judge Clemon's order.

On June 7, 2006, the undersigned entered an order to remand CV-06-RRA-306-S after the expiration of 15 days.  On June 16, 2006, Sheeler amended its previous notice of appeal to add an appeal from the order of remand as well.  The undersigned treated that amended notice of appeal as an objection to his order of June 7, 2006.  The undersigned then entered an order for the Clerk to draw a district judge to make a final disposition of the remand motion.

On June 20, 2006, O'Carrs filed the current motion for attorney's fees and costs to be assessed against Sheeler, claiming that "Sheeler, in CV-06-RRA-306-S, removed the state court action filed by O'Carrs Management Corporation against her to this Court without any reasonable justification, and without any reasonable basis for the jurisdiction of this Court in that action." *Motion for Award of Costs and Attorney Fees*, at 1.

On September 18, 2006, the Eleventh Circuit Court of Appeals dismissed, for lack of jurisdiction, Sheeler's appeals from the orders of May 8, and June 7, 2006.

On _____, Judge Sharon L. Blackburn adopted the undersigned's report and recommendation and ordered CV-06-RRA-306-S to be remanded.

II.   STANDARD OF REVIEW

In *Bauknight v. Monroe County, Fla.*, 446 F.3d 1327 (11th Cir. 2006), the Eleventh

3

Circuit, relying on the Supreme Court case of *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), set out the following standard for awarding fees and costs where a case was remanded after removal had been found inappropriate:

> Recently, the Supreme Court enunciated a standard to guide the district courts in deciding whether to award fees when remanding a case to state court because of improper removal. *Martin*, 126 S.Ct. at 711. The Court held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* Explicitly rejecting the notion that the statute created a presumption in favor of awarding fees, the Court explained that § 1447(c) only authorized an award of costs and fees when such an award was just. *Id.* at 709-10. The reasonableness standard was ultimately the result of balancing "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. *Id.* at 711.

*Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1329 (11th Cir. 2006).

### III.   ANALYSIS

Sheeler argues that it had an objectively reasonable basis for removal.

On the subject of federal question jurisdiction and removal, the Supreme Court has stated:

> With exceptions not relevant here, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed. See § 1447(c). For this case--as for many cases where there is no diversity of citizenship between the parties--the propriety of removal turns on whether the case falls within the original "federal question" jurisdiction of the United States district courts: "The district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1976 ed., Supp. V).
> 
>    Since the first version of § 1331 was enacted, Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470, the statutory phrase "arising under the Constitution, laws, or treaties of the United States" has resisted all attempts to frame a single, precise definition for

determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts. Especially when considered in light of § 1441's removal jurisdiction, the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.

The most familiar definition of the statutory "arising under" limitation is Justice Holmes' statement, "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). However, it is well settled that Justice Holmes' test is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction. We have often held that a case "arose under" federal law where the vindication of a right under state law necessarily turned on some construction of federal law, see, *e.g., Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Hopkins v. Walker,* 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917), and even the most ardent proponent of the Holmes test has admitted that it has been rejected as an exclusionary principle, see *Flournoy v. Wiener,* 321 U.S. 253, 270-272, 64 S.Ct. 548, 556-557, 88 L.Ed. 708 (1944) (Frankfurter, J., dissenting). See also *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 827 (CA2 1964) (Friendly, J.). Leading commentators have suggested that for purposes of § 1331 an action "arises under" federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 889 (2d ed. 1973) (hereinafter Hart & Wechsler); cf. *T.B. Harms Co., supra* ("a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law").

One powerful doctrine has emerged, however — the "well-pleaded complaint" rule — which as a practical matter severely limits the number of cases in which state law "creates the cause of action" that may be initiated in or removed to federal district court, thereby avoiding more-or-less automatically a number of potentially serious federal-state conflicts. "[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson,* 234 U.S. 74, 75-76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914).

Thus, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, *Taylor v. Anderson, supra; Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), or that a federal defense the defendant may raise is not sufficient to defeat the claim, *Tennessee v. Union & Planters' Bank,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). "Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution."

5

*Louisville & Nashville R. Co. v. Mottley, supra,* 211 U.S., at 152, 29 S.Ct., at 43. For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff* 's complaint establishes that the case "arises under" federal law. "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

It is possible to conceive of a rational jurisdictional system in which the answer as well as the complaint would be consulted before a determination was made whether the case "arose under" federal law, or in which original and removal jurisdiction were not co-extensive. Indeed, until the 1887 amendments to the 1875 Act, Act of Mar. 3, 1887, ch. 373, 24 Stat. 552, as amended by Act of Aug. 13, 1888, ch. 866, 25 Stat. 433, the well-pleaded complaint rule was not applied in full force to cases removed from state court; the defendant's petition for removal could furnish the necessary guarantee that the case necessarily presented a substantial question of federal law. See *Railroad Co. v. Mississippi,* 102 U.S. 135, 140, 26 L.Ed. 96 (1880); *Gold-Washing & Water Co. v. Keyes,* 96 U.S. 199, 203- 204, 24 L.Ed. 656 (1877). Commentators have repeatedly proposed that some mechanism be established to permit removal of cases in which a federal defense may be dispositive. See, *e.g.,* American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1312, at 188-194 (1969) (ALI Study); Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 233-234 (1948). But those proposals have not been adopted.

For many cases in which federal law becomes relevant only insofar as it sets bounds for the operation of state authority, the well-pleaded complaint rule makes sense as a quick rule of thumb. Describing the case before the Court in *Gully,* Justice Cardozo wrote:

> "Petitioner will have to prove that the state law has been obeyed before the question will be reached whether anything in its provisions or in administrative conduct under it is inconsistent with the federal rule. If what was done by the taxing officers in levying the tax in suit did not amount in substance under the law of Mississippi to an assessment of the shareholders, but in substance as well as in form was an assessment of the bank alone, the conclusion will be inescapable that there was neither tax nor debt, apart from any barriers Congress may have built. On the other hand, a finding upon evidence that the Mississippi law has been obeyed may compose the controversy altogether, leaving no room for a contention that the federal law has been infringed. The most that one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states." 299 U.S., at 117, 57 S.Ct., at 99-100.

>The rule, however, may produce awkward results, especially in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal preemption defense. Nevertheless, it has been correctly understood to apply in such situations. As we said in *Gully*, "By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." 299 U.S., at 116, 57 S.Ct., at 99.

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 7-12, 103 S.Ct. 2841, 2845 - 2848 (U.S. 1983) (footnotes omitted).

Where a complaint fails specifically to allege federal law as its basis, "the 'law that creates the cause of action' is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one [of the claims] is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13.  For the case to be a federal question, " a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

The complaint in 06-RRA-306-S states as follows:

FACTS

6. For a number of years, J. Cameron Carr and his wife, June, have owned and operated O'Carrs Delicatessen in Homewood, Alabama.

7. O'Carrs Management Corporation was established for the purposes of franchising the methods of operation perfected by the Carrs over a number of years in the restaurant business.

8. On or about December 6,2004 the defendant, Patricia A. Sheeler, executed and entered into a franchise agreement and other related contemporaneous agreements with O'Carrs Management Corporation after having been given appropriate

predisclosures. A true and correct copy of that executed franchise agreement is attached hereto as Exhibit    A.

9. During the negotiation and execution of the franchise agreement with O'Carrs Management Corporation, the defendants had selected a location for their restaurant, negotiated a lease and prepared the space for the restaurant to be opened. Under the terms of the franchise agreement, the defendants were required to meet certain specifications to comply with the O'Carrs concept.

10. The defendants opened their restaurant on or about May 31, 2005 and, pursuant to the franchise agreement, were provided training in the O'Carrs method, assistance in set up and operations, and were given access to custom point of sale software developed for the plaintiff, operational manuals, recipes, menus and other trade secrets, all pursuant to the franchise agreement.

11. Pursuant to the franchise agreement, the defendants were required to provide monthly financial reports to O'Carrs Management Corporation. Nevertheless, financial reports for the three-month period including June, July and August were not provided despite repeated requests.

12. The defendants had also refused to comply with the franchise agreement concerning the use of approved paper products with the appropriate logo and consistently resisted efforts on behalf of O'Carrs Management Corporation, the franchisor, urging her compliance with the terms of the franchise agreement.

13. Due to these and other difficulties with the defendants, O'Carrs Management Corporation terminated the franchise of these defendants on October 5, 2005. See Exhibit B.

14. On October 7, 2005, the defendants filed a Request for Injunctive Relief in this Court under Case No. CV 05-6008 asking the Court to enjoin the termination efforts of O'Carrs Management Corporation.

15. Following the filing of this litigation, ongoing negotiations took place between the parties and their attorneys, with the express agreement that the matters would remain status quo pending an outcome of the negotiations. Throughout that period of time, and pursuant to this agreement, the defendants continued to operate their restaurant as an O'Carrs franchise and were allowed to remain in possession of the operations manual, recipes and highly confidential and trade secrets which had been acquired by the defendants through the franchise agreement all pending the outcome of the parties discussions.

16. On or about December 16, 2005, the defendants terminated their counsel in that litigation, Steve Ball, and then hired new counsel, Gene Rutledge, to represent their interest. Mr. Rutledge requested additional time to acquire the file and for review of the matter

17. Without further contact with the plaintiffs counsel, the defendants, through their new attorney, dismissed, without notice, the pending action in this Court, and filed a new proceeding in federal court.

18. Pursuant to the arbitration agreement between these parties under section 17.10, the defendants are required to arbitrate the grievances they have expressed since the termination of the franchise.

19. Under section 17.8 of the Franchise Agreement between these parties, once the franchise is terminated, the franchisor is entitled "without bond, to the entry of a temporary and permanent injunctions . . . ." (See Agreement attached as Exhibit A).

20. Since hiring their most recent attorney, the defendants have maintained possession of the plaintiffs operations manual, continued to operate under the name O'Carrs for several days thereafter, and is continuing to serve menu items of O'Carrs, the custom point of sale software, restaurant decor and unique concepts, all of which were gained by virtue of her franchise agreement with the plaintiff.

21. Moreover, the defendants have terminated any payments to the plaintiff effective January 4, 2006, stopping any further royalties due to the from the operation of the franchise.

22. The plaintiff terminated the franchise of the defendants in October of 2005. Upon termination under the Franchise Agreement signed, these defendants are required to return their operations manuals and any copies thereof, discontinue the use of the name, trade, colors, menus, recipes and other items gleaned from this agreement, and to adhere to a restrictive covenant not to compete within a 15-mile radius of their restaurant location for a period of two years.

23. The defendants' ongoing operation of their restaurant, together with the use of the trade secrets and property of the plaintiff, is causing irreparable injury to the plaintiff for which there is no adequate remedy at law.

24. Furthermore, upon information and belief, the defendants, while appearing to still use the O'Carrs restaurant concepts, are planning to offer alcoholic beverages for sale and take other steps, which would bring damage to the plaintiffs ability to control the central concept that was being offered as part of the franchise arrangement.

25. The defendants have failed to provide profit and loss statements or to make their books and records available and are in material breach of their franchise agreement which resulted in the termination.

26. The plaintiff now seeks an injunction to enforce and protect the rights of the plaintiff of the franchise agreement these defendants executed.

27. Immediate injunctive relief is needed in order to prevent further harm to the

plaintiffs confidential trade secrets all made part of their ongoing franchising operations. The defendants' actions will cause substantial risk of harm if an immediate injunction is not entered to protect the plaintiffs assets and require these defendants to adhere to the agreement they previously executed.

COUNT ONE
REQUEST FOR INJUNCTIVE RELIEF

Plaintiff incorporates by reference the above paragraphs 1 through 26 and makes them a part hereof. -

28. Plaintiff requests preliminary and permanent injunction pursuant to Rule 65 of the Alabama Rules of Civil Procedure enjoining the defendants from continuing to operate a restaurant in violation of their franchise agreement and restrictive covenants contained thereunder, and the plaintiff further prays for injunctive relief requiring the defendants to return the operations manuals and all copies thereof, and to cease and desist from the use of recipes, menu items, restaurant logos and other confidential trade secrets acquiring by virtue of her franchise agreement.

COUNT TWO
BREACH OF CONTRACT

Plaintiff incorporates by reference the above paragraphs I through 27 and makes them a part hereof.

29. The defendants have breached their contract with the plaintiff and as a proximate result thereof, the plaintiff has been damaged.

30. The defendants have failed to pay the full franchise fee as agreed to buy the franchise and have failed to remit to the plaintiff royalty fees pursuant to their contract during the ongoing operation of the defendants' restaurant.

WHEREFORE, PREMISES CONSIDERED, plaintiff seeks entry of preliminary and permanent injunction according to the foregoing paragraphs, and for such other and further relief, including a judgment against the defendants for the damages caused as this Court may deem just and appropriate.

*Complaint*, at 2-6.

The only cause of action in the complaint is breach of contract, a state law cause of action. The complaint does not reference a federal law or cause of action in any way. It simply states a breach of a franchise agreement. Nowhere is reference made to a "security"

or the federal securities laws.  Sheeler nonetheless argues:

> [T]he exhibit to the complaint in the state case governed over the allegations of the complaint under Alabama law and O'Carrs had only two weeks before filing the state case accepted federal question jurisdiction of the document -agreement and asked the federal court to interpret it and grant binding arbitration so that any omission to plead the conceded federal question came under the prohibitions of *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct . 2841, 2853, 77 L.Ed.2d 420 (1983) that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint."

*Opposition to Motion for Costs*, at 4-5.  Sheeler further states:

> The State litigation complaint has attached to it a copy of the alleged franchise agreement which, according to Sheeler's interpretation, shows through the degree of control exercised by O'Carrs and the division of the profits between Sheeler and O'Carrs  that it is an investment contract and a certificate in a profit sharing scheme and thus a security under the 1934 Securities Exchange Act. Under Alabama law, the content of exhibits to pleadings controls over the allegations of pleadings where there is any conflict between the two. An exhibit made the basis of a cause of action or defense and contradicting the averments of the pleading of which it is a part will control such pleading. *McCullough v. Alabama By-Product s Corp.*, 343 So.2d 508, 510 (Ala. 1977) "Under Alabama law, an exhibit attached to a pleading is not only a part of it, but, in case of a variance between the allegations of the pleading and the exhibit attached thereto, the contents of the exhibit control . *Doggett v. Hunt*, 93 F.Supp. 426 (S.D.Ala.1950), appeal dismissed, 199 F.2d 152 (5th Ci r . 1950). *See, e.g. , Twine v. Liberty National Life Ins . Co.*, 294 Ala. 43, 311 So.2d 299 (1975) ; *McCay v. Big Town, Inc.*, 293 Ala. 582, 307 So.2d 695 (1975).  Therefore, the content of the exhibit, the document central to the dispute in both the federal and State Litigation, controls the content and nature of the allegations in the State litigation.  As s tated above, a Sheeler may not defeat removal by omitting to plead necessary federal questions in a complaint. O'Carrs as Sheelers in the s tate court action deliberately avoided pleading necessary federal questions because only a few weeks earlier O'Carrs admitted there was federal jurisdiction for the federal court to interpret the document attached to the complaint and declare, in the language of the O'Carrs in the federal court , "all disputes" under the document were subject to arbitration to be ordered by the federal court. Having sought this federal relief as to the same document plead in the state court act ion, O'Carrs could not avoid federal jurisdiction by failing to mention the federal questions on which they relied to seek relief from the federal court.  Federal courts have exclusive jurisdiction over all suits brought to enforce any liability or duty the 1934 Securities Exchange Act creates . (15 U.S.C. § 77aa.) The federal and state courts have concurrent jurisdiction of actions under the 1933 Act (15 U.S.C. §77v.) The State litigation is an effort to deprive Sheeler of her claims that the O'Carrs agreement is in violation of the 1934 Act because the state court has no jurisdiction to hear or decide Sheeler's claims and defenses under the 1934 Act.  Therefore, the case is subject to removal because

11

whether of not the O'Carrs agreement is valid are issues that "arise under" federal law.

*Id.* at 8.

First, it must be examined whether the exhibit actually contradicts the complaint in this matter. Sheeler contends that the franchise agreement, attached to the complaint, should be controlling because *Sheeler's interpretation* of the agreement is that it is a security, even though the agreement does not refer to itself as a security and the complaint does not contend that it is a security.

The cases cited by Sheeler reference examples where there was a literal conflict between the exhibit and the complaint. For example, in *McCullough v. Alabama By-Products Corp.,* 343 So.2d 508 (Ala. 1977), the Alabama Supreme Court was faced with an appeal from a judgment on the pleadings, upholding an agreement of the parties to be bound by the findings of an aerial survey. *McCullough,* 343 So.2d at 509. The court summarized the facts as follows:

> On October 19, 1973, W. H. McCullough and Alabama By-Products Corp. (ABC) agreed that McCullough would clear and windrow approximately 2500 acres of ABC's land for $43.50 an acre. After performance of the contract had begun, the parties orally agreed that McCullough would not clear certain acres but would be paid as if he had cleared them. ABC also allegedly agreed to pay 10% More to offset increased fuel prices. A dispute arose over how much land had been cleared and what payment was due. On January 31, 1975, the parties agreed to submit the conflict to arbitration and to be bound by the report of Atlantic Aerial Surveyor, Inc. The report favored ABC and McCullough objected to it.
>
> On November 26, 1975, McCullough filed suit in the Circuit Court of Jefferson County, seeking payment for work performed, including payment for the trees required to be left standing, payment for the 10% Fuel adjustment increase and a restraining order against ABC to preserve the status quo of cleared land until the final determination.
> The circuit court granted the temporary restraining order. In its answer ABC claimed that McCullough failed to state a claim upon which relief could be granted.

> ABC later filed a motion for judgment on the pleadings under Rule 12(c) of the Alabama Rules of Civil Procedure (ARCP), on the ground that it appeared from the complaint and the exhibit attached stating that the survey 'shall be binding on the parties' that no controversy existed. McCullough in response moved the court to quash ABC's motion on the grounds that a Rule 12(c) motion is rarely granted and the exhibit does not preclude the bringing of this action.
> 
> In its judgment the circuit court stated that an exhibit made the basis of a cause of action and contradicting the averments of the pleadings of which it is a part will control the pleadings. The circuit court granted ABC's motion and McCullough appeals.

*Id.* at 509 -510. The state supreme court affirmed the decision.

In *Doggett v. Hunt*, 93 F.Supp. 426, (N.D. Ala. 1950), also cited by Sheeler, the district court was faced with a motion to remand. The issue was whether the jurisdictional minimum was met. The removal petition alleged that the matter in controversy was a "leasehold interest," although, in fact, uncontroverted evidence showed that the market value of the lease in question did not equal the jurisdictional amount. *Id.* at 430. However, attached to the motion to remand was the plaintiff's complaint, which made it clear that the matter in controversy concerned the drilling of the two wells at issue "which, as a matter of common knowledge would involve more than the jurisdictional amount." *Id.* On that basis, the court denied the motion to remand.

In *McCay v. Big Town, Inc.*, 293 Ala. 582, 583, 307 So.2d 695, 695 - 696 (Ala. 1975), the Alabama Supreme Court summarized the facts as follows:

> Plaintiffs appeal from a judgment dismissing their suit against defendant for damages resulting from the destruction of plaintiffs' store building by fire. Herman McCay and his wife, Mary Shirley McCay, the plaintiffs, leased the building to defendant, Big Town, Inc., and defendant, Bargain Town, U.S.A., guaranteed the performance of the lease by lessee, Big Town, Inc. The period of the lease was October 18, 1967 to December 31, 1977.
> In January, 1974, the building was destroyed by fire. On June 21, 1974, plaintiffs filed this suit alleging that the fire was caused by and through the negligence (Count I) or the wanton conduct (Count II) of the defendants. The defendants filed

a motion to dismiss on the grounds that the counts failed to state a claim against defendants upon which relief could be granted and that 'It affirmatively appears under the lease attached to the complaint as Exhibit 'A' that plaintiffs have waived cause of action against defendant occasioned by negligence resulting in destruction or damage to real or personal property caused by fire.'

*McCay v. Big Town, Inc.*, 293 Ala. 582, 583, 307 So.2d 695, 695 - 696 (Ala. 1975). The court affirmed dismissal, stating:

Rule 12(b)(6), ARCP, permits the defendant to file a motion to dismiss for 'failure to state a claim upon which relief can be granted.' The lease was an exhibit to the complaint and it is conceded that the construction of paragraph 14 of the lease is controlling. The parties agreed to waive causes of action against each other in case either's property was destroyed or damaged by fire resulting from the other's negligence. This agreement barred plaintiffs' suit and the trial court properly dismissed it.

*McCay v. Big Town, Inc.*, 293 Ala. 582, 584-585, 307 So.2d 695,697 (Ala. 1975). *See also, Twine v. Liberty Nat. Life Ins. Co.*, 294 Ala. 43, 49, 311 So.2d 299, 304 (Ala. 1975) ("It is true that the complaint in Claim Two uses the words price fixing, but the exhibit clearly shows no price fixing.")

In each of the above cited cases, there was an actual conflict between the allegations of a complaint or other document, and the contents of an exhibit attached thereto. Either the exhibit expressly denied the availability of the cause of action, or specifically stated facts inconsistent with the allegations of the main document.

In the instant case there is no such conflict between the wording of the franchise agreement and the allegations of the complaint. Nowhere does the franchise agreement specifically deny the cause of action it has alleged. Neither does the franchise agreement specifically contradict anything stated in the complaint. Sheeler cited no case for the proposition that its contention that the franchise agreement is a "security" creates a

14

contradiction between the franchise agreement and the complaint.

Sheeler next states that because it brought a "coercive action" under federal law in CV-06-RRA-0013-S, concerning the same franchise agreement, removal of the action was proper. Sheeler cites *Household Bank v. JFS Group*, 320 F.3d 1249, 1256 (11th Cir. 2003), in support of its argument. However, *Household Bank* stands for the proposition that "federal-question jurisdiction exists *in a declaratory judgment action* if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law." *Household Bank v. JFS Group*, 320 F.3d 1249, 1251 (11th Cir. 2003). The instant action (CV-06-RRA-306-S) is not a declaratory judgment action. It seeks injunctive relief for breach of contract.

However, Sheeler has another argument against awarding fees and costs to O'Carrs. Sheeler contends that

> the only way in which the Court could rule that it did not have jurisdiction over interpretation of the document attached to O'Carrs' state complaint would have been to dismiss the original federal action for lack of jurisdiction because it was the content of the document-agreement attached to O'Carrs' state complaint and not the allegations of the complaint in the state case that controlled and the Court had already accepted jurisdiction of the document-agreement in the federal action.

*Opposition to Motion for Costs*, at 5.

Even though Sheeler might have been in error in filing her case in federal court, alleging federal subject matter jurisdiction,[1] O'Carrs did not challenge federal jurisdiction, rather O'Carrs proceeded to ask the federal court to order arbitration. Then, when O'Carrs filed its case in state court, involving the same controversy, it was rather natural for Sheeler

---

[1]The first-filed action is still active in this court.

to remove that case to federal court, where the two actions were consolidated. Thus, it can reasonably be argued that O'Carrs, in a sense, was complicit in Sheeler's removal of the action in question to this court. Under these circumstances, O'Carr's motion for attorney's fees and costs is due to be denied.

III     **RECOMMENDATION**

For the reasons stated above, it is recommended that the motion for attorney's fees and costs be denied.

DONE this 19th day of January, 2007.

_____
Robert R. Armstrong, Jr.
United States Magistrate Judge